IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | Judge: |
| | ) | |
| ALLEGHENY COUNTY d/b/a ALLEGHENY | ) | |
| COUNTY JAIL; ORLANDO HARPER, | ) | |
| individually and in his official capacity; | ) | |
| LATOYA WARREN, individually and in her | ) | |
| official capacity; KIAH L. MACK, individually | ) | |
| and in his official capacity; SIMON | ) | |
| WAINWRIGHT, individually and in his official | ) | |
| capacity; DANIEL BOSI, individually and in his | ) | |
| official capacity; RICH PRICE, individually and | ) | |
| in his official capacity; DAN HANCOCK, | ) | |
| individually and in his official capacity; A. | ) | |
| DEVLIN, individually and in his official capacity; | ) | |
| KEVIN HOFFMAN, individually and in his | ) | |
| official capacity; ALEXIS ANDERSON, | ) | |
| Individually and in their official capacity; | ) | |
| | ) | *Electronically filed* |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT IN CIVIL ACTION**

AND NOW comes the Plaintiff, JANE DOE, by and through her attorneys, Barth &
Associates and Steve M. Barth, Esquire, and brings this Complaint in Civil Action, and in support
thereof alleges as follows:

### JURISDICTION

1.     This action is brought pursuant to 42 U.S.C. § 1983 and the Fifth Amendment,
Eighth Amendment and 14th Amendment to the United States Constitution.

1

2.      Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343 and the aforementioned statutory and constitutional provisions.

3.      Venue is proper as all claims set forth herein arose in the Western District of Pennsylvania and all parties reside in the Western District of Pennsylvania.

<u>PARTIES</u>

4.      Plaintiff, JANE DOE, is an adult resident of the Commonwealth of Pennsylvania. Ms. DOE at the time of the subject civil rights violations was serving a criminal sentence/violation in the Allegheny County Jail.

5.      At all times relevant hereto, the Defendant ALLEGHENY COUNTY, doing business as Allegheny County Jail, was a local state agency organized and existing under the laws of the Commonwealth of Pennsylvania, authorized to and maintaining the Allegheny County Jail for the purposes of safely detaining, incarcerating and rehabilitating citizens and inhabitants of Allegheny County.

6.      At all times relevant hereto, Defendant ORLANDO HARPER (hereinafter "DEFENDANT HARPER") was the Warden of the Allegheny County Jail charged with the control and supervision of all guards and/or employees, independent contractors, and/or persons employed/working within the jail.  As such, he was responsible for the training, supervision, direction, procedures and conduct of all guards, staff, personnel, independent contractors, and was responsible for the health and safety of inmates within the Allegheny County Jail.

7.      At all times relevant hereto, Defendant HARPER was responsible for creating and executing policies to ensure the safety, health, and availability and provision of care, custody and control of all inmates within the Allegheny County Jail.  Accordingly, Defendant HARPER was responsible for formulating and implementing jail guard procedures to protect the safety, health, availability and/or provision of adequate care and custody to inmates.

2

8.     At all times relevant hereto, Defendant HARPER represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to all staff actions including but not limited to correctional guard actions, duties, responsibilities, training, procedures, supervision regarding the safety, health, housing, availability and/or provision of adequate care, custody and control of inmates.  As such, Defendant HARPER acted under color of state law in those regards.

9.     At all times relevant hereto, Defendant LATOYA WARREN, (hereinafter "WARREN") was the deputy warden of the Allegheny County Jail charged with the control and supervision of all guards employed within the jail.  As such, she was responsible for the training, supervision, direction, procedures and conduct of all staff including but not limited to correctional guards, and was responsible for the health, cell assignment, safety, custody, housing and control of inmates within the Allegheny County Jail.

10.     At all times relevant hereto, Defendant WARREN represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to guard actions, duties, responsibilities, training, procedures, supervision regarding the safety, health, housing, availability and/or provision of adequate care, custody and control of inmates.  As such, Defendant WARREN acted under color of state law in those regards.

11.     At all times relevant hereto, Defendant WARREN was responsible for creating and executing policies to ensure the safety, health, and availability and provision of adequate care, custody and control to all inmates within the Allegheny County Jail.  Accordingly, Defendant WARREN was responsible for formulating and implementing jail guard procedures to protect the safety, health, availability and/or provision of adequate care, custody and control to inmates.

12.     Defendant, KIAH L. MACK, (hereinafter referred to as "Defendant MACK") was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, cell

3

assignments, and /or other relevant activity to provide adequate safety and protection to inmates from other inmates. She is being sued in her individual capacity.

13.    Defendant, SIMON WAINWRIGHT, (hereinafter referred to as "Defendant WAINWRIGHT") was at all times relevant the Deputy Warden of the Allegheny County Jail and acting under color of state law.  In his role as Deputy Warden, Mr. Wainwright was responsible for the training, cell assignments, housing, supervision, direction, procedures and conduct of all correctional staff including but not limited to sergeants and guards, and was further responsible for the safety, health and general well-being of all inmates and detainees.  He is being sued in his individual capacity.

14.    At all times relevant hereto, Defendant WAINWRIGHT represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to guard actions, duties, responsibilities, training, procedures, supervision regarding the safety, health, availability and/or provision of adequate care, custody and control of inmates.  As such, Defendant WAINWRIGHT acted under color of state law in those regards.

15.    At all times relevant hereto, Defendant WAINWRIGHT was responsible for creating and executing policies to ensure the safety, health, and availability and provision of adequate care, custody and control to all inmates within the Allegheny County Jail.  Accordingly, Defendant WAINWRIGHT was responsible for formulating and implementing jail guard procedures to protect the safety, health, availability and/or provision of adequate care, custody and control to inmates.

16.    Defendant, DANIEL BOSI, (hereinafter referred to as "Defendant BOSI") was at all times relevant a Captain of the Allegheny County Jail and acting under color of state law.  In his role as Captain, Defendant Bosi was responsible for the training, supervision, direction, procedures and conduct of all correctional staff including but not limited to sergeants and guards,

4

and was further responsible for the safety, health and general well-being of all inmates and detainees. He is being sued in his individual capacity.

17.     Defendant, RICH PRICE, (hereinafter referred to as "Defendant PRICE") was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, classification, housing of inmates, implementing policy, supervising, making rounds, cell assignments, and /or other relevant activity to provide adequate safety and protection to inmates from other inmates. He is being sued in his individual capacity.

18.     Defendant, DAN HANCOCK, (hereinafter referred to as "Defendant HANCOCK") was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, classification, housing of inmates, cell assignments, and /or other relevant activity to provide adequate safety and protection to inmates from other inmates. He is being sued in his individual capacity.

19.     Defendant, A. DEVLIN, (hereinafter referred to as "Defendant DEVLIN") was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, cell assignments, and /or other relevant activity to provide adequate safety and protection to inmates from other inmates. This correctional officer is sued in their individual capacity.

20.     Defendant, ALEXIS ANDERSON, (hereinafter referred to as "Defendant ANDERSON") was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, cell assignments, and /or other relevant activity to provide adequate safety and

protection to inmates from other inmates. This correctional officer is sued in their individual capacity.

21.     Defendant, KEVIN HOFFMAN, (hereinafter referred to as "Defendant HOFFMAN") was at all times relevant an Allegheny County Jail Correctional Officer, and acting under color of state law and was responsible for managing, implementing policy, supervising, making rounds, cell assignments, and /or other relevant activity to provide adequate safety and protection to inmates from other inmates. This correctional officer is sued in their individual capacity.

22.     This suit is against all the Defendants in their individual capacities, and it is alleged that all Defendants were acting under color of state law with respect to the conduct complained of in this complaint.

23.     At all times relevant hereto, all of the Defendants are agents, servants, and/or employees of ALLEGHENY COUNTY and will be collectively referred to as the "COUNTY Defendants".

<u>FACTUAL ALLEGATIONS</u>

24.     At all times relevant hereto, all Defendants were required to adhere to and enforce the following policies and procedures:

      a.     All Defendants must not permit any inmate to be subjected to abuse;

      b.     All Defendants must thoroughly investigate allegations of abuse;

      c.     All Defendants define abuse as (1) the use of excessive force upon an inmate, (2) an occurrence of an unwarranted life-threatening act against an inmate; (3) a verbal or written threat to inflict physical injury directed toward an inmate; and/or (4) sexual conduct;

      d.     All Defendants must allow abuse to be reported verbally or in writing to any staff member;

e.      All Defendants agree that sexual harassment of inmates is prohibited;

f.      All Defendants define harassment as sexual advances, requests for sexual favors, and other verbal, visual or physical contact of a sexual nature, sexually offensive comments or gestures or any physical contact that is of a sexual nature or sexually suggestive;

g.      All Defendants agree that all sexual contact with inmates is prohibited;

h.      All Defendants agree that sexual contact refers to any sexual behavior directed towards an inmate; it includes, but is not limited to: rape, any acts or attempts to commit acts which involve sexual contact, sexual abuse or assault, the intentional touching, either directly or through clothing, of the genitalia, anus, groin, breast, inner thighs, or buttocks.

25.      At all times relevant hereto, the COUNTY Defendants and Defendant

ALLEGHENY COUNTY were also required to adhere to and enforce the following policy and

procedures:

a.)      These Defendants must consider correctional officer-inmate sexual assaults prevention as one of the highest priorities of service within the correctional setting;

b.)      These Defendants must work together to identify inmates at risk for sexual assault by other inmates or correctional staff;

c.)      These Defendants will have an outlined program for responding to sexual assaults of inmates;

d.)      These Defendants must educate, train, enforce and/or adhere to the proper procedure in reporting sexual assaults and/or fraternization of correctional officers with inmates to make sure that inmates are not being sexually assaulted, raped and/or abused by correctional officers and/or other inmates for any period of time;

e.)      These Defendants must learn about an inmates' high risk periods of being sexually assaulted by other inmates and/or correctional staff;

f.)      These Defendants must learn, supervise and/or report any information that relates to sexual assaults on inmates by correctional staff;

g.)      These Defendants must make rounds upon the pod pursuant to policy and procedure in order to prevent sexual assaults upon inmates by correctional staff on the pod;

h.)      These Defendants will review information of any indication of sexual assaults by correctional staff upon inmates on a pod in this institution;

i.)      These Defendants conducting the rounds on a pod will be continuously alert to violent/suspect/harmful behavior;

j.)    These Defendants will train their staff who work with inmates to recognize verbal and behavioral cues that indicate the potential for inmate abuse by correctional staff;

k.)    These Defendants who recognize an inmate as being potentially abused either physically or sexually are to request immediate intervention/investigation of the situation through the appropriate authorities;

l.)    These Defendants' staff who recognize an inmate as being potentially abused by anyone are to request immediate assistance in investigating said matter;

m.)    Regular, documented supervision should be maintained of a pod by a correctional officer;

n.)    Regular, documented round should be maintained of a pod by a correctional officer;

o.)    Constant supervision by a staff member of the pod is required and if a situation arises which requires intervention, it must be investigated immediately and intervention is required if the safety of an inmate is at issue;

p.)    The procedures for making rounds and how rounds are made as well as inspection of cells should be clearly outlined;

q.)    Clear, current and accurate information regarding an inmate must be communicated between shifts and correctional personnel pursuant to the procedures of communication;

r.)    The intervention plan on how to handle inmate abuse by correctional staff that is in progress should be clearly outlined;

s.)    Procedures for notifying correctional administrators, outside authorities and family members of potential, attempted or completed inmate abuse by correctional staff will be in place;

t.)    Procedures for documenting the identification and monitoring of potential or attempted inmate abuse by correctional staff will be detailed, as well as procedures for reporting a completed inmate abuse by correctional staff;

u.)    The intervention plan should specify the procedure for administrative review if an inmate is sexually abused by a correctional staff member or other inmates;

v.)    A formal procedure of collecting evidence and preserving evidence such as camera footage must be in place and clearly outlined;

w.)    Must place inmates in the proper classifications;

x.)    Must place inmates with the appropriate cellmate.

26.    At all times relevant hereto, the above Defendants knew or should have known about the following facts and situations existed at the Allegheny County Jail prior to August 8, 2017:

a.    There are areas of the Allegheny County Jail which are not on camera and

8

       are known to the Defendants which include certain cells on PODS as well as other areas in the jail.

b.      Cameras assisted the correctional staff in monitoring the jail.

c.      It was well known that areas off camera at the Allegheny County Jail increased the risk of violent and/or sexual abuse occurring on the jail premises.

d.      Most pods were only staffed with one correctional officer.

e.      A correctional officer could arbitrarily and without supervisor approval move inmates from pod to pod as well as cell to cell.

f.      It is important to classify and house someone properly at a jail because of safety; specifically, an inmate could be put at risk for attacks and increased victimization if an inmate is arbitrarily housed and moved from cell to cell or pod to pod.

g.      Misconducts/Grievances help notify correctional staff of issues on pods and/or with inmates;

h.      Intercom system/call button were NOT to be shut off for any reason by the correctional staff because it jeopardized the safety and health of all inmates housed on various pods;

i.      The intercom system/call button is utilized to notify the correctional staff that an inmate is in distress and in need of possible emergency action such as preventing and/or responding to acts of sexual assault;

j.      The intercom system/call button is an important safeguard for inmate safety from violence and/or sexual assault from other inmates.

27.    At all times relevant hereto, Tara Washington, an inmate, was being housed in Level 4, Pod F.

28.    At all times relevant hereto, Tara Washington was considered a predator and as such was housed on Level 4, Pod F because of this categorization by the Defendants.

9

29.     At all times relevant hereto, the Plaintiff was not considered a predator and was several months pregnant at the time she was housed on Level 4, Pod F.

30.     At all times relevant hereto, all of the Defendants knew that Tara Washington was a threat to any cellmate who was assigned to the cell where she was located on Level 4, Pod F.

31.     At all times relevant hereto, the Plaintiff was improperly assigned to Level 4, Pod F by any and all of the Defendants to be the cellmate of Tara Washington which placed her at a substantial risk of harm due to the character and prior conduct of Tara Washington.

32.     At all times relevant hereto, Defendant MACK was a correctional officer at the Allegheny County Jail.

33.     At all times relevant hereto, Defendant MACK and/or one of the other Defendants had the authority and was within the scope of her employment to respond to the intercom system/call button when utilized by an inmate to request information and/or report emergencies and/or assaults.

34.     At all times relevant hereto, Defendant MACK and/or one of the other Defendants was instructed and/or knew that the intercom system/call button was not to be shut off because it created a substantial risk of harm for the inmates located in a cell because it prevented them from being able to report assaults and/or other emergencies to the inmate's health, safety, and/or peace of mind.

35.     At all times relevant hereto, in the alternative, Defendant MACK and/or one of the other Defendants was never trained to not shut off the intercom system/ call button by the co-

Defendants and as such a substantial risk of harm was created against the inmates located in these cells for assaults, sexual and/or physical, by other inmates.

36.     At all times relevant hereto, Defendant MACK and/or one of the other Defendants, with the knowledge and silent consent of the co-Defendants in this matter, began to shut off the intercom system/call button in an arbitrary and/or capricious manner which created a substantial risk of harm to inmates being assaulted by other inmates who were housed on Level 4, Pod F.

37.     At all times relevant hereto, Defendant MACK and/or all of the other Defendants knew or should have known that the Plaintiff was at a risk of substantial harm of an assault from her cellmate (Tara Washington) based upon the Plaintiff's conduct which showed that she was in distress and at a risk of assault on August 7, 2017 and/or August 8, 2017.

38.     At all times relevant hereto, all of the Defendants knew that Tara Washington was a threat to any cellmate assigned to her cell based upon the following:

     a.)     Grievances filed by the other inmates;

     b.)     Official Inmate Complaint forms;

     c.)     Confidential informants;

     d.)     Witnessing events;

     e.)     Witnessing attacks;

     f.)     Increased medical requests for unexplained injuries/medical conditions;

     g.)     Incident reports by correctional officers for unexplained injuries/medical conditions;

     h.)     Inmates refusing to cooperate or explain injuries/medical conditions.

39.     On or about the late afternoon/evening of August 7, 2017 one of the named Defendants assigned the Plaintiff to the cell occupied by Tara Washington on Level 4, Pod F with knowledge of the substantial harm Tara Washington presented to any cellmate assigned to the cell as described above and below in this Complaint.

40.     At all times relevant hereto, the Defendants knew or should have known of the following:

a.)     Plaintiff repeatedly attempted to notify the correctional officer on duty (Defendant Mack and/or one of the named Defendants) that she needed to speak with her outside the presence of her cellmate because she feared for her safety and to report a sexual assault.

b.)     Defendant Mack and/or one of the other Defendants responded to these various requests by eventually shutting off the intercom system/call button which prevented the Plaintiff from being able to obtain help to prevent any further sexual assaults.

c.)     Plaintiff is sexually assaulted repeatedly after the intercom system/call button is shut off by Defendant Mack and/or one of the other named Defendants on August 8, 2017.

d.)     Plaintiff recalls seeing a white shirt walk by her door where she was pounding on the door in order to get his attention so that she could have the sexual assaults stop.

41.     At all times relevant hereto, the Plaintiff's cell mate, Tara Washington, was still located in her cell at the time she pressed the call button which Defendant MACK and/or all of the Defendants knew at all times relevant hereto.

42.     At all times relevant hereto, Defendant MACK and/or all of the Defendants did not attempt to investigate what the personal matter was which the Plaintiff wanted to discuss with her.

43.     At all times relevant hereto, Defendant MACK and/or all of the Defendants knew or should have known that a personal matter could cover topics such as safety, danger, and/or threats of physical and/or sexual violence.

44.    At all times relevant hereto, Defendant MACK and/or all of the Defendants knew or should have known that the Plaintiff would not be able to speak from inside her cell where her cellmate was located in order to report feeling threatened by her cellmate.

45.    At all times relevant hereto, Defendant MACK and/or all of the Defendants informed the Plaintiff that she was not allowed out of her cell at this time and that she could speak to an officer during med pass and/or some other time.

46.    At all times relevant hereto, Defendant MACK and/or all of the Defendants switched off the intercom system/call button to the cell where the Plaintiff was located and as such, the Plaintiff was continually sexually assaulted by her cellmate.

47.    At all times relevant hereto, all of the Defendants knew that inmates located in cells could tell when the intercom system/call button was shut off because the light above the cell would no longer light and as such, this created a substantial risk of harm for any inmate housed in a cell with a violent/aggressive/and/or dangerous inmate.

48.    At all times relevant hereto, the Plaintiff continued to press the call button/intercom system while in her cell with her cellmate because she was physically and/or sexually assaulted by her cell inmate.

49.    At all times relevant hereto, the Plaintiff was improperly classified and should never have been assigned a cell with Tara Washington.

50.    At all times relevant hereto, Tara Washington was improperly classified and should never have been assigned a cell with the Plaintiff.

51.    At all times relevant hereto, even though the Plaintiff continued to try to get help from the on duty correctional officer, no help arrived and the Plaintiff endured sexual abuse from her cell mate, Tara Washington.

13

52.     At all times relevant hereto, the conduct and actions of Defendant MACK and/or

all of the Defendants was known to the other Defendants in this matter and is evidenced by the

following:

    a.    The area where Defendant MACK was located was equipped with an on/off switch for the intercom system/call button which all Defendants knew would be shut off by the correctional officers stationed at those areas for a variety of reasons which would place any and all inmates housed in those areas at a substantial risk of harm from other inmates and/or correctional officers.

    b.    There was no policy or procedure in place which required that the intercom system/call button must remain on and open at all times so that an inmate could communicate with a correctional officer.

    c.    All of the Defendants knew that when the intercom system was shut off and/or the call button disabled/switched off, the inmates located in the cells knew that all communications with the correctional staff was shut off.

    d.    All of the Defendants knew or should have known that prior inmates were physically and/or sexually assaulted by their cellmates when the call button/intercom system was shut off by the correctional staff.

53.     At all times relevant hereto, the Allegheny County Jail, by and through the conduct

and actions of the COUNTY Defendants, the Defendants knew or should have known of the

conduct of Defendant MACK and other correctional officers in shutting off the intercom

system/call buttons.

54.     On or about August 8, 2017, Plaintiff JANE DOE was sexually assaulted several

times by her cellmate, Tara Washington, and as a direct and proximate result, she sustained the

following various injuries and damages:

    a.)    Bruising on her breasts;

    b.)    Unwanted touching to her breasts;

    c.)    Unwanted touching to her vaginal area;

    d.)    Mental distress;

    e.)    Aggravation and/or exacerbation of pre-existing conditions;

    f.)    PTSD;

g.)     Anxiety.

55.     At all times relevant hereto, the intercom system/call button was shut off by Defendant *MACK* and prevented the Plaintiff from requesting help while she was sexually assaulted.

56.     At all times relevant hereto, all parties can agree that violations are ONLY punishable by imprisonment, probation, fines and/or what is prescribed by Pennsylvania law.

57.     All parties can agree that inmates are prohibited from sexually abusing, raping, sexually assaulting, victimizing and/or having sexual relations with other inmates.

58.     All parties can agree that nothing under Pennsylvania law allows beatings, corporal punishment, sexual abuse, sexual assaults, victimization or any other sexual/physical/mental violence or conduct as part of a sentence for a criminal conviction or plea or violation.

59.     During the period of time that the Plaintiff was located in her cell with her cellmate and after she had requested to speak with Defendant MACK about a personal matter several times, the Plaintiff was attacked and sexually assaulted repeatedly.

60.     During the period of time that Defendant MACK shut off the intercom system/call button on this date, the Plaintiff was attacked and sexually assaulted by her cellmate, Tara Washington, repeatedly.

61.     At all times relevant hereto, all of the Defendants knew or should have known of the conduct described in the entire Complaint.

62.     At all times relevant hereto, the COUNTY Defendants knew or should have known that Defendant MACK and other correctional staff were shutting off the intercom systems/call buttons at their stations for a variety of reasons which created a substantial risk of harm to all

inmates in cells with disabled intercoms/call buttons and prevented these inmates from notifying staff of assaults, rapes, emergencies and/or any other conduct.

63.    At all times pertinent hereto, the COUNTY Defendants and other supervisory named Defendants had knowledge of this systemic failure of the intercom system/call button procedure, but did nothing in deliberate indifference to the health, safety and welfare of all inmates, specifically the Plaintiff.

64.    At all times pertinent hereto, the COUNTY Defendants and other supervisory named Defendants had knowledge that inmates' grievances were not being delivered to the appropriate party and/or office in a secure and safe manner which related to this issue with the correctional staff shutting off the intercom system/call button.

65.    This systemic failure of the grievance procedure created an intentionally ineffective system for inmates to communicate their complaints and/or concerns.

66.    The grievance procedure implemented by the COUNTY Defendants, and followed by Defendant HARPER, and other supervisory named Defendants, was futile and in deliberate indifference to the rights of inmates, specifically the Plaintiff.

67.    At all times relevant during these sexual attacks by inmates on other inmates, it is believed that the intercom system/call button was shut off by correctional officers for a variety of reasons which greatly affected the safety, care, custody and control of the inmates housed in these areas.

68.    At all times relevant hereto, the following individuals knew or should have known about the abuse that was occurring at the jail but chose not to report it and acted to promote this type of conduct:

    a.    Defendant HARPER;
    b.    Defendant WARREN;

c.      Defendant WAINWRIGHT;
d.      Defendant BOSI;
e.      Defendant MACK;
f.      Defendant PRICE;
g.      Defendant HANCOCK;
h.      Defendant DEVLIN;
i.      Defendant ANDERSON;
j.      Defendant HOFFMAN.

69.     In addition to the above-mentioned personnel, Defendants HARPER, WAINWRIGHT, BOSI and WARREN, as administration of Allegheny County Jail had a duty to control and/or supervise all of the correctional officers employed by Allegheny County.

70.     Additionally, all of the COUNTY DEFENDANTS were responsible for creating and executing policies to ensure the safety, health, and availability and provision of adequate supervision of inmates on the pods within Allegheny County Jail.

71.     Moreover, as the COUNTY Defendants were responsible for formulating and implementing procedures to protect the safety, health, availability and provision of adequate care, custody and control as well as proper housing and guard interaction with inmates

72.     Additionally, the COUNTY Defendants condoned behavior by the named Defendants that created an environment whereby employees of Allegheny County Jail and/or inmates were unable to report incidents of inappropriate conduct by fellow employees and/or supervisory staff and/or other inmates.

73.     The named Defendants serving in supervisory roles intentionally disregarded and/or actively condoned in this inappropriate conduct in deliberate indifference to the health, safety and welfare of all inmates, specifically the Plaintiff.

74.     Upon information and belief, the COUNTY Defendants had knowledge of this behavior and/or conduct of correctional staff shutting off intercom systems/call buttons, but did nothing.

75.     At all times relevant hereto, it is believed that the COUNTY Defendants and Defendant ALLEGHENY COUNTY knew or should have known of the conduct of all Defendants on Level 4, pod F and other pods due to the following but not limited to:

a.)     Grievances filed by the other inmates;

b.)     Official Inmate Complaint forms;

c.)     Confidential informants;

d.)     Witnessing events;

e.)     Witnessing attacks;

f.)     Increased medical requests for unexplained injuries;

g.)     Incident reports by correctional officers for unexplained injuries;

h.)     Inmates refusing to cooperate or explain injuries.

76.     By failing to act and/or stop Defendant MACK and/or other named Defendants, all of the COUNTY Defendants affirmed their conduct and in doing so, acted in deliberate indifference to health, safety and welfare of all inmates, specifically the Plaintiff.

77.     No one took any of the pregnant female inmate's complaints seriously until after she was sexually assaulted repeatedly.

78.     As a direct and proximate result of the Defendants' conduct, Plaintiff suffered the following injuries:

a.     Sexual assault;

b.     Physical abuse;

c.     Mental Distress;

d.     Aggravation and/or exacerbation of any pre-existing medical and/or mental condition;

e.     Post traumatic stress disorder;

18

    f.      Emotional Distress;

    g.     Mental Anguish;

    h.     Depression; and,

    i.      Anxiety.

79. As a result of these injuries, Plaintiff has sustained the following damages:

    a.     She has suffered and will suffer great pain, inconvenience, embarrassment and mental anguish;

    b.     She may be required to pay sums of money for medical attention, medical supplies and medicines;

    c.     Her general health, strength and vitality have been impaired;

    d.     She has been and will be deprived of her earnings;

    e.     Her earning capacity has been reduced and may be permanently impaired; and,

    f.      She has been and will in the future be unable to enjoy various pleasures of life that she previously enjoyed.

## COUNT I - 42 U.S.C. §1983
## PLAINTIFF v. ALL DEFENDANTS

80. At all times relevant hereto, Defendants were acting under color of the statutes, ordinances, regulations, customs and usages of Defendant and under the authority of their offices as law enforcement officers.

81. Defendants deprived Plaintiff  of the rights, privileges, and immunities secured to him by 42 U.S.C. §1983 and by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, as well as the rights, privileges and immunities provided by Plaintiff  by the Pennsylvania state constitution.

82. Plaintiff's injuries and damages were the direct and proximate result of the

Defendants' conduct as follows:

  a.  In failing to recognize that the Plaintiff was the potential victim of sexual assaults at the hands of other inmates;

  b.  In failing to properly housing/classify the Plaintiff and/or Tara Washington;

  c.  In failing to respond properly or adequately to the objective signs that the Plaintiff was the victim of intimidation and coercion by her cellmate;

  d.  In failing to properly monitor the employees, servants and/or agents of the Defendants;

  e.  In failing to provide a safe environment that would have prevented physical and emotional abuse Plaintiff endured while incarcerated at Allegheny County Jail;

  f.  In failing to review information concerning issues related to proper conduct of Corrections Officers and other staff of Allegheny County Jail;

  g.  In failing to outline the procedures for the proper handling of inmates at the Allegheny County Jail;

  h.  Deliberate indifference to the Constitutional rights of the citizens of this Commonwealth;

  i.  Deliberate indifference to the need to protect the citizens and inmates from physical and sexual attacks by Corrections Officers and/or other inmates;

  j.  Deliberate indifference to their Corrections Officers' use of shutting off the call buttons/intercom system which increased the risk of excessive violence and/or sexual assaults by inmates on inmates;

  k.  Deliberate indifference to the obvious need for training and supervision of their Corrections Officers;

  l.  Failing to properly train their Corrections officers, including Defendants so that intercom systems and/or call buttons were not shut off for any reason when monitoring inmates;

  m.  Failing to properly supervise their Corrections Officers so that inmate on inmate violence which included sexual abuse, physical abuse and mental abuse, would not be applied when housing inmates together;

  n.  In failing to train properly individual corrections officers in safe methods of handling incarcerated persons;

o.    In failing to train properly individual corrections officers in the monitoring of incarcerated persons under the care and custody of the Defendants;

p.    In failing to review information concerning issues related to sexual assaults of inmates by cellmates;

q.    In allowing other inmates to sexually assault and abuse inmates;

r.    In allowing other inmates to physically abuse other inmates;

s.    In allowing other inmates to mentally abuse and/or sexually abuse inmates;

t.    In violating policy and procedures with deliberate indifference;

u.    In allowing inmates to sexually harass inmates;

v.    In failing to report to the proper authorities anything about the known sexual assaults, abuse and other conduct being performed on the inmates;

w.    In implementing policies and procedures that infringed on the rights of inmates;

x.    Co-Defendants had actual knowledge of this practice of shutting off the intercom system/call buttons which created substantial risk of rapes, sexual assaults and harassment of inmates by other inmates, as specified in the preceding paragraphs in this Complaint, and yet failed to intervene to prevent and/or stop the acts from continuing, despite having a reasonable and realistic opportunity to intervene;

y.    Defendant Correctional Officers, Sergeant and Captain failed to perform their requisite duties, namely, to perform routine "rounds" or supervisory walk-throughs, which would have alerted them to ongoing rapes, sexual assaults and harassment of female inmates by other inmates such as this Plaintiff;

z.    Defendants ignored obvious signs that inmates were raping, sexually assaulting and harassing other inmates when the call buttons/intercom system was shut off by correctional staff for a variety of reasons;

aa.   Defendants, after learning of the ongoing rapes, sexual assaults and harassment, failed to intervene and protect the Plaintiffs or similar inmates situated from further rapes, sexual assaults and harassment;

bb.   Defendants, after learning of the ongoing rapes, sexual assaults and harassment in cells where the intercom system/call buttons were

disabled/shut off, failed to report these findings to the appropriate authorities so as to protect the inmates from further rapes, sexual assaults and harassment;

cc.    In failing to place the Plaintiff in the appropriate housing unit;

dd.    In failing to place Tara Washington in the appropriate housing unit;

ee.    In failing to provide regular and documented supervision of pod 4 F

ff.    In failing to take action when they received appropriate information that Tara Washington was a threat to other inmates on pod 4 F;

gg.    In failing to follow the policies and procedures which govern pod 4 F;

hh.    In failing to do rounds every hour on pod 4 F;

ii.    In failing to outline the procedures for when the call button/intercom system was to be shut off;

jj.    In failing to provide procedures for communication between shifts, correctional officers, administrators and Allegheny County Jail correctional personnel regarding the status of a pod in a clear, current and accurate fashion;

kk.    In allowing the intercom button/call button to be shut off for any reason;

ll.    In failing to outline an intervention plan on how to handle sexually violent inmates;

mm.    In failing to have procedures in place to notify the Allegheny Jail administrators, outside authorities and family members of potential, attempted or completed sexual attacks on inmates;

nn.    In failing to provide procedures of documenting the identification and monitoring of potential or attempted attacks on inmates by inmates;

oo.    In failing to monitor the CCTV and communicating and perceived risks;

pp.    In failing to install cameras in "off camera" areas;

qq.    In failing to stop housing inmates in "off camera" areas;

rr.    In recognizing that the jail was built in a way that made it unsafe to house inmates in certain cells;

22

ss.  Defendants Harper and Wainwright had actual knowledge that cells that were "off camera" were far more likely to be the location of assaults, both physical and sexual in nature, and they had actual knowledge of other assaults that occurred in "off camera" cells;

tt.  Defendants Harper and Wainwright had actual knowledge that certain cells were "off camera", and thus posed an unreasonable risk of harm to inmates;

uu.  Defendants Harper and Wainwright had a rape/sexual assault tolerance policy established through its failure to punish, reprimand and/or take any corrective or disciplinary measure against Allegheny County Jail employees who failed to intervene to protect or cease sexual assaults between inmates. This created a culture whereby rapes, sexual assaults and sexual harassment of inmates could not only continue, but were both tolerated and permitted;

vv.  In failing to properly classify the inmates and housing predatory inmates with inmates who would be likely victims.

83.  At all times relevant, it was the practice, policy and/or custom of Defendants and/or their officers, including the Defendants to place inmates at a substantial risk of sexually assault by shutting off call buttons/intercom systems without provocation or cause, thereby depriving individuals of their rights.

84.  At all times relevant, it was the practice, policy and/or custom of Defendants to place inmates at a substantial risk of sexually assault by improperly classifying inmates and/or in an arbitrary and capricious manner thereby depriving individuals of their rights.

85.  In clear violation of the United States Constitution, all Defendants allowed inmates to suffer physical, mental and sexual abuse.

86.  Defendants, in depriving Plaintiff of his constitutional rights, were intentional, negligent, recklessly indifferent, willful, wanton, malicious, and outrageous.

87.  The actions of the individual corrections officers/Defendants as aforesaid resulted from and were taken pursuant to a policy, practice, and/or custom of the Defendants, which policy, practice and/or custom is implemented by individual corrections officers.

88.     Defendants have approved and condoned the procedures implemented by and enforced by the individual correctional officers.

89.     The Defendants' failure to recognize or respond to the substantial risk of harm in a deliberate indifference to the rights of the Plaintiff which included sexual abuse, physical abuse and mental abuse, presented by their employees, servants and/or agents to inmates while the inmates were in the care and custody of the Defendants caused Plaintiff's injuries and damages.

90.     The unlawful practices, customs and/or policies of the Defendants included the following as well as the above stated averments:

a.      Deliberate indifference to the Constitutional rights of the inmates incarcerated in Allegheny County Jail;

b.      Deliberate indifference to the need to protect the inmates from physical, sexual and mental abuse by other inmates;

c.      Deliberate indifference to their Corrections officers' use of excessive force and abuse in controlling and monitoring inmates;

d.      Deliberate indifference to the obvious need for training and supervision of their Corrections officers and other jail personnel;

e.      Failing to properly train their Corrections officers so that excessive force and abusive conduct would not be applied to inmates;

f.      Failing to properly supervise their Corrections officers, including so that excessive force and abusive conduct would not be applied when interacting with inmates;

g.      In allowing these officers to be unsupervised;

h.      In allowing and condoning their officers' actions handling inmates in order to intimidate and coerce citizens who have witnessed Correction Officer misconduct;

i.      In promoting an atmosphere where citizen's rights are ignored in order to cover up misconduct;

j.      In housing inmates in an arbitrary manner;

k.    In allowing any correctional employee to be able to classify an inmate without proper authority, training and/or education;

l.    In allowing access to housing assignments to correctional officers and allowing them to move inmates without any oversight, approval or plan;

m.    In allowing correctional officers to move inmates;

n.    In allowing inmates who were predatory to be housed with vulnerable inmates.

91. Plaintiff also claims reasonable attorneys' fees and costs from Defendants as provided for by 42 U.S.C. §1988.

WHEREFORE, the Plaintiff demand judgment against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.  JURY TRIAL DEMANDED.

## COUNT II– PLAINTIFFS v. ALL DEFENDANTS

92.    The Plaintiffs incorporate by reference thereto the above paragraphs of the within Complaint the same as though set forth herein and at length.

93.    Pursuant to 42 Pa. C.S.A. §8548, Defendant ALLEGHENY COUNTY is the indemnitor of its employees, the individual corrections officers, for the payment of any judgment for damages resulting from a judicial determination that an act of either or any of individual corrections officers was the cause and their actions were within the scope of their duties as corrections officers.

94.    Plaintiffs are therefore entitled to recover payment from the Defendant ALLEGHENY COUNTY for any judgment against the individual Defendant corrections officers arising from the prior counts of this Complaint.

WHEREFORE, the Plaintiffs demand judgment against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.  JURY TRIAL DEMANDED.

## JURY DEMAND

PLAINTIFF REQUESTS THAT ALL ISSUES THAT MAY BE DETERMINED BY A JURY BE TRIED BY A JURY.

Respectfully submitted,
Barth & Associates


/s/ Steve M. Barth
Steve M. Barth, Esquire
Attorney for the Plaintiff
PA ID No. 89395
P.O. Box 23627
Pittsburgh, PA 15222
(412) 779 – 3806
smbassociates@gmail.com